# EXHIBIT 1

CAUSE NO. 2029837

| JANE DOE | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| VS. | § | WALKER COUNTY, TEXAS |
| | § | |
| UNITED STATES OLYMPIC COMMITTEE | § | Walker County - 278th District Court<br>_____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

JANE DOE (hereinafter, "Plaintiff") files this Original Petition and Request for Disclosure complaining of UNITED STATES OLYMPIC COMMITTEE (hereinafter, "Defendant" or "USOC"), and would respectfully show this Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1. Pursuant to Rules 190.1 and 190.4 of the Texas Rules of Civil Procedure, Plaintiff files this petition under a Level 3 Discovery Control Plan.

### II.
### REQUEST FOR DISCLOSURE

2. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant is requested to disclose the information and material described in Rule 194.2 **within fifty days** of the service of this request at the office of the undersigned.

### III.
### PARTIES

3. Plaintiff, Jane Doe, is an individual residing in Cherokee County, Georgia.

4. Defendant, United States Olympic Committee, is a not-for-profit corporation, having its principal place of business in the State of Colorado and its headquarters in Colorado

Filed: 9/2/2020 6:29 PM
Robyn M. Flowers
District Clerk
Walker County, Texas
Melissa Fuentes

Springs, Colorado. This Defendant may be served with process through its registered agent, National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever this Defendant and/or registered agent may be found.

5. Plaintiff specifically invokes the right to institute this suit against whatever entity was conducting business using the assumed or common name of "United States Olympic Committee" with regard to the events described in this Petition. Plaintiff expressly invokes her right under Rule 28 of the Texas Rules of Civil Procedure to have the true name of this party substituted at a later time upon the motion of any party or of the Court.

## IV.
## JURISDICTION

6. The Court has jurisdiction over the subject matter of this lawsuit and the amount in controversy is above the minimum jurisdictional limits of this Honorable Court. Plaintiff is seeking monetary relief over $1,000,000.00.

## V.
## VENUE

7. Venue is proper in Walker County, Texas pursuant to § 15.002(a)(1) of the Texas Civil Practice and Remedies Code, as Walker County is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred.

## VI.
## FACTUAL BACKGROUND

8. This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff, Jane Doe, as a result of the acts and omissions of Defendant United States Olympic Committee ("USOC"), and its respective employees, representatives, and agents, relating to the sexual assault by Lawrence Gerard Nassar ("Nassar") and Debra Van Horn ("Van Horn") against Plaintiff.

2

9. Plaintiff was an elite minor gymnast who competed in national competitions as a member of USA Gymnastics and the USA Gymnastics Team.

10. Plaintiff attended training camps at Karolyi Ranch ("Karolyi"), located in Huntsville, Texas. Karolyi, a USOC sponsored program and training facility, was designated by USOC as the official Olympic National Team Training Facility for Gymnastics in 2010.

11. Plaintiff was attending a national team camp at Karolyi when she sought treatment with Nassar. Nassar was appointed by the USOC as a member of the medical staff for the USA Gymnastics National Team in 1996, where he provided medical treatment to the team and other USA Gymnastics gymnasts. Van Horn, a USA Gymnastics trainer, worked side-by-side with Nassar and provided treatment at Karolyi.

12. While attending a national team camp at Karolyi in approximately 2010, Plaintiff was scheduled with Nassar and Van Horn to receive treatment for an injury to her hamstring. Under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Plaintiff in the presence of Van Horn. Nassar massaged Plaintiff's pelvic area, grazing and touching Plaintiff's vulva and anus. Nassar then proceeded to digitally penetrate her vagina without the use of gloves or lubricant.

13. Plaintiff was approximately 13 years old at the time of the assault. Nassar did not give prior notice or obtain consent from Plaintiff or her parents for digital penetration, and Plaintiff did not treat or intend to treat with Nassar for OB/GYN issues. Plaintiff believes the conduct of Nassar was for his pleasure and self-gratification, and constituted sexual assault, abuse, and molestation.

14. In approximately 2011, Plaintiff competed in Jesolo, Italy as a member of the U.S. Women's Team. The U.S. Women's Team was directed by Martha Karolyi, National Team Coordinator for USA Gymnastics.

15. While competing in Jesolo, Plaintiff sought treatment from USA Gymnastics trainer Van Horn. Under the guise of treatment, Van Horn sexually abused and molested Plaintiff. Van Horn massaged Plaintiff's pelvic area, grazing and touching Plaintiff's vulva. Plaintiff was uncomfortable with Van Horn's unnecessary touching and subsequently avoided treatment with Van Horn. Plaintiff did not treat or intend to treat with Van Horn for OB/GYN issues.

16. By way of background, Defendant USOC was originally chartered to organize and promote the United States' participation in international Olympic Competition. Among other powers, the USOC is authorized to recognize and control one eligible sports organization as a National Governing Board ("NGB") for each of the various sports represented in the Olympic Games. USA Gymnastics ("USAG") is one of 47 NGBs recognized by the USOC that sponsors or arranges amateur athletic competition. The USOC is responsible for the conduct of its NGBs and is required to make sure athletes are kept safe from sexual predators. At all times relevant to Plaintiff's claim, USAG was as an entity under USOC's control, and Nassar and Van Horn acted as agents of USOC.

17. For elite gymnasts like Plaintiff, USAG administers a structured set of Women's Artistic gymnastics programs. Specifically, as relevant here, USAG runs the Talent Opportunity Program (TOPs) that identifies young girls (ages 7-10) for further training up to the Elite level. After successfully completing TOPs, girl gymnasts can qualify for the Elite Program. The Elite Program consists of regional and national training programs and competitions designed for

athletes aspiring to represent the United States in international competition, including the Olympics. The Elite Program has two groups of women athletes divided by age: Junior Elite (11-15) and Senior Elite (15+). Women from the Elite Program can qualify for the National Teams, and USAG selects members of the National Teams from the US Championships each year. Composed of the best gymnasts in the nation, the National Team represents the United States in international competitions, and members of the National Team can qualify to represent the United States at the Olympics. Girls must qualify for USAG's Elite Program in order to qualify for the USA Olympics Team.

18. During all relevant times, USAG had a notorious culture of abuse over its members, particularly girl athletes in the Elite Programs who are on the National Teams. For highly competitive gymnasts, USAG has a culture of physical and emotional abuse that pressures young girls to conceal weakness and misconduct by superiors (including coaches and team doctors) and forces them to bow to the will of those superiors. The purpose of the abusive culture was to push the young girls to be psychologically indestructible and stoic in the face of adversity, pain, or even sexual abuse. The perfectionist culture and the insular politics of the sport meant that the consequences of speaking out are too great for these young girls with dreams of the National Teams, as it could mean the difference between qualifying up or flunking out. This culture of abuse led the abused girls to stay silent about the sexual abuse they were experiencing at the hands of Dr. Nassar.

19. Gymnastics is one of the most dangerous sports in the world, with a substantial risk of injury, particularly repetitive motion injuries. Many gymnasts, including Plaintiff, suffered injuries throughout their gymnastics career. The culture of abuse forced them to train

injured, risking graver injuries. The frequency and severity of injuries among USAG's athletes led USAG to have full-time medical personnel on staff, including doctors like Dr. Nassar.

20. Defendant USOC has an extensive history concerning the sexual misconduct of its employees, agents, and representatives. In August 2016, The Indianapolis Star published a lengthy article regarding an investigation into USAG and its handling of sexual abuse complaints titled "A blind eye to sex abuse: How USA Gymnastics failed to report cases." Following the Indianapolis Star article, former gymnast Rachael Denhollander, filed a criminal complaint with the Michigan State University Police alleging that in 2000, at the age of 15, she was sexually abused by Nassar during treatments for lower back pain. The following day, Michigan State University relieved Nassar of clinical and patient duties. On September 8, 2016, a former Olympic medalist filed a civil lawsuit in California, alleging sexual abuse by Nassar from 1994 to 2000. A few days later, The Indianapolis Star published a second article titled "Former USA Gymnastics doctor accused of abuse," which included Denhollander's allegations against Nassar. Following the September 2016 publication, other victims began coming forward after recognizing that they too were victims of sexual abuse at a time when most of them were minors.

21. In the summer of 2015, USAG relieved Nassar of his duties after becoming aware of concerns regarding his actions. However, USAG failed to inform its members, including Plaintiff, or the clubs/organizations affiliated with Nassar, of the allegations and potential harm to Plaintiff and others. Similarly, Defendant USOC failed to help facilitate awareness, despite being informed of Nassar's abuse in 2015, 14 months prior to his arrest.

22. In late 2018, Nassar spent several weeks in Michigan courtrooms, receiving three sentences in criminal court. Following a multitude of charges, Nassar ultimately plead guilty to three charges of child pornography and ten counts of criminal sexual conduct, admitting that his

sexual assaults were not done for a medical purpose. Nassar was sentenced to 720 months (60 years) in federal prison for the child pornography charges, and two prison terms of up to 75 and 135 years respectively, for the sexual conduct charges. Dozens of victims and other individuals provided victim impact statements at the sentencing hearings, and victims originally wanting to proceed in litigation anonymously chose to publicly identify themselves.

23. Fundamentally, the acts and omissions of Defendant USOC and its employees, agents, and representatives, in conjunction with USOC's policies, customs, and practices concerning the investigation of sexual assault allegations, severely compromised the health and safety of known and unknown victims. Specifically, the aforementioned practices resulted in repeated instances of sexual assault, abuse, and molestation by Nassar.

## VII.
## CAUSES OF ACTION

**A. NEGLIGENCE**

24. Defendant USOC owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while being treated by its employees, representatives and agents.

25. Plaintiff, as a member of USAG, had a reasonable expectation that Defendant USOC was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

26. By seeking medical treatment from Nassar and Van Horn in their capacities as employees, agents, and/or representatives of Defendant USOC, a special, confidential, and fiduciary relationship between Plaintiff and USOC was created, resulting in Defendant USOC owing Plaintiff a duty to use ordinary care.

27. Defendant USOC breached this duty by various acts of omission and/or commission, including but not limited to the following, each of which, individually and/or in the aggregate was a proximate cause of the incident in question:

   a. Failure to adequately train and supervise Nassar and Van Horn;

   b. Failure to properly investigate, address, and remedy complaints regarding the conduct of Nassar and Van Horn;

   c. Failure to inform Plaintiff and the public of the allegations and concerns leading to Nassar's separation from USAG and USOC.

28. Such negligence, individually, and/or in the aggregate, proximately caused Plaintiff's damages.

## B. GROSS NEGLIGENCE

29. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraph.

30. Defendant USOC owed Plaintiff a duty to use due care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with its employees, representatives, and/or agents.

31. Plaintiff was a member of USAG and the USAG team, participated in USOC sanctioned events (events held by USAG), and was referred to Nassar and Van Horn through USOC affiliations.

32. Nassar and Van Horn owed Plaintiff a duty to use due care in their respective capacities as employees, representatives and/or agents of Defendant USOC.

33. By seeking medical treatment from Nassar and Van Horn in their capacities as employees, agents, and/or representatives of Defendant USOC, a special, confidential, and

8

fiduciary relationship between Plaintiff and USOC was created, resulting in Defendant USOC owing Plaintiff a duty to use due care.

34. Defendant's failure to adequately supervise Nassar and Van Horn was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff.

35. Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant was so reckless as to demonstrate a substantial lack of concern for whether or not injury would result to Plaintiff.

36. Van Horn's conduct in sexually assaulting, abusing, and molesting Plaintiff under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant was so reckless as to demonstrate a substantial lack of concern for whether or not injury would result to Plaintiff.

37. Defendant's conduct demonstrated a willful disregard for substantial risks to Plaintiff, and for necessary precautions to reasonably protect Plaintiff's.

38. Defendant breached its duties to Plaintiff and were grossly negligent when they conducted themselves by actions described above, including but not limited to its failure to notify its member athletes about the issues surrounding sexual abuse in gymnastics, warnings signs, and reporting requirements. Said acts were committed with reckless disregard for Plaintiff's health and safety, and with a substantial lack of concern as to whether an injury would result.

39. Defendant's conduct was reckless and/or done with an intentional state of mind. Such gross negligence was a proximate cause of the occurrence and Plaintiff's damages. Therefore, Plaintiff is entitled to punitive and/or exemplary damages.

9

## C. RESPONDEAT SUPERIOR

40. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

41. USAG and Defendant USOC employed and/or held Nassar out to be their employee, agent, and/or representative from approximately 1986 to 2015. Therefore, Defendant is indirectly liable for the negligence of its employees, including Nassar, during the course and scope of their employment. Specifically, Defendant's employees, acting within the course and scope of their employment, have a general duty to exercise reasonable care in performing their work. However, Nassar and Van Horn, as Defendant's employees, failed to exercise reasonable care, resulting in injury to Plaintiff. Consequently, Defendant is liable for Plaintiff's injuries and damages caused by Nassar and Van Horn during the course and scope of their employment.

## D. EXPRESS/IMPLIED AGENCY

42. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

43. An agent is a person who is authorized to act on behalf of another.

44. Defendant USOC intentionally or negligently made representations that Nassar and Van Horn were employees, agents, and/or representatives.

45. Based on those representations, Plaintiff reasonably believed, and relied upon the belief, that Nassar and Van Horn were acting as employees, agents, and/or representatives of Defendant.

46. Plaintiff was injured as a result of Nassar's and Van Horn's sexual assault, abuse, and molestation as described above. Such conduct was carried out through Nassar's and Van Horn's employment, agency, and/or representation with Defendant.

47. Plaintiff was injured as a result of her reliance on Defendant to provide employees or agents who would exercise reasonable skill and care.

### E.  **NEGLIGENT SUPERVISION**

48. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

49. Defendant USOC had a duty to provide reasonable supervision of Nassar and Van Horn as its employees, agents, and/or representatives throughout the course of their work in such capacity, including their interactions with young female athletes such as Plaintiff.

50. It was reasonably foreseeable, given the known sexual abuse in youth sports, particularly gymnastics, that Nassar, having been the subject of prior allegations, had or would sexually abuse children such as Plaintiff, unless properly supervised.

51. Defendant, by and through its employees, agents, managers, and/or assigns, knew or reasonably should have known of Nassar's conduct and/or his unfitness as an employee, agent, and/or representative due to his sexual interest in children and young adults.

52. Defendant, by and through its employees, agents, managers, and/or assigns, knew or reasonably should have known of Van Horn's conduct and/or her unfitness as an employee, agent, and/or representative.

53. Defendant breached its duty to provide reasonable supervision of Nassar and Van Horn, and its failure permitted Nassar and Van Horn, who occupied positions of trust and authority, to commit the acts against Plaintiff.

54. The aforementioned sexual abuse occurred while Nassar and Van Horn were acting in the course of their employment, agency, and/or representation of Defendant.

55. Defendant tolerated, authorized, and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel or discipline Nassar or Van Horn, allowing them to violate the rights of persons such as Plaintiff with impunity.

### F. NEGLIGENT FAILURE TO WARN OR PROTECT

56. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

57. Given the direct or indirect knowledge of sexual abuse in youth sports, particularly gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were not taken by Defendant USOC.

58. Defendant knew or should have known that Nassar posed a risk of harm to Plaintiff and/or those in Plaintiff's situation.

59. Defendant had direct and/or constructive knowledge as to the dangerous conduct of Nassar and failed to act reasonably and responsibly in response.

60. Defendant knew or should have known that Nassar previously committed sexual assault, abuse, and molestation, and/or was continuing to engage in such conduct.

61. Defendant had a duty to warn or protect Plaintiff, as a USOC member, and others in Plaintiff's situation against the risk of injury by Nassar.

62. The duty to disclose this information arose from the special, trusting, confidential, and fiduciary relationship between Plaintiff and Nassar in his capacity as an employee, agent, and/or representative of Defendant.

63. Defendant breached said duty by failing to warn Plaintiff of Nassar.

64. Defendant breached its duties to protect Plaintiff by failing to detect and/or uncover evidence of sexual abuse and sexual assault. Specifically, Defendant failed to investigate, adjudicate, suspend, and/or ban Nassar from USAG/USOC affiliation and sanctioned events.

65. Defendant failed to adequately screen, counsel, and/or discipline Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant, resulting in the violation of Plaintiff's rights.

66. Defendant willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Nassar's conduct.

## G. **NEGLIGENT FAILURE TO TRAIN OR EDUCATE**

67. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

68. Defendant USOC breached its duty to take reasonable protective measures to protect Plaintiff and other individuals from the risk of childhood sexual abuse and/or sexual assault by Nassar, such as failing to properly train or educate Plaintiff and others (including minors) about how to avoid such a risk.

69. Further, Defendant failed to implement reasonable safeguards to:

   a. Prevent acts of sexual assault, abuse, and molestation by Nassar and Van Horn; and

   b. Avoid placing Nassar and Van Horn in positions that allowed unsupervised contact and interaction with Plaintiff and other young athletes.

70. Defendant failed to train or educate its members, including Plaintiff, regarding the foreseeability and danger of sexual abuse by adults holding positions of authority such as Nassar.

## H. NEGLIGENT RETENTION

71. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

72. Defendant USOC failed its duty to exercise due care when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising its employees, agents, and/or representatives.

73. Defendant was negligent in the retention of Nassar as an employee, agent, and/or representative in its failure to adequately investigate, report, and address complaints about Nassar's conduct.

74. Defendant was negligent in the retention of Nassar after Defendant discovered, or reasonably should have discovered, that Nassar's conduct reflected a propensity for sexual misconduct.

75. Defendant's failure to act in accordance with the standard of care permitted Nassar to sexually abuse and/or sexually assault Plaintiff and other individuals.

76. The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Nassar created a foreseeable risk of harm to Plaintiff and other minors/young adults.

## I. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

78. Defendant USOC allowed Nassar to be in a position where he could sexually assault, abuse, and molest children and young adults.

79. A reasonable person would not expect Defendant to tolerate or permit its employee, agent, or representative to commit sexual assault, abuse, or molestation.

80. Defendant held Nassar in high esteem and acclaim which in turn encouraged Plaintiff and others to respect and trust Nassar, seek out his services, and not question his methods or motives.

81. Defendant protected Nassar in part to bolster its national and international reputation in the gymnastics community.

82. A reasonable person would not expect Defendant to be incapable of supervising and/or preventing Nassar from committing acts of sexual assault, abuse, and molestation.

83. The conduct of Defendant as described above was intentional and/or reckless.

## J. FRAUD AND MISREPRESENTATION

84. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

85. Defendant USOC represented to Plaintiff and the public that Nassar was a competent, ethical, and safe physician.

86. By representing that Nassar was the Team Physician for USAG, Defendant represented to Plaintiff and the public that Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiff and the public need not worry about being harmed by Nassar.

87. The representations were falsely made as Nassar sexually assaulted, abused, and molested Plaintiff and others prior to making such representations, and was continuing to do so.

15

88. Additionally, complaints were made to Defendant, either directly or through its agents, yet Defendant did not contact its members, including Plaintiff, or any clubs/organizations affiliated with Nassar to inform them of the allegations and potential harm.

89. Plaintiff relied on Defendant's assertions and sought treatment from Nassar in the wake of concerns and dangers known to Defendant.

90. Plaintiff was subjected to sexual assault, abuse, and molestation as a result of Defendant's fraudulent misrepresentations regarding Nassar.

## VIII.
## DAMAGES

91. As a result of the above acts and omissions of Defendant, Plaintiff sustained serious injuries and damages. Plaintiff brings this action for the following damages:

   a. Past and future physical pain and suffering, and that which she will, in all probability, suffer in the future;

   b. Past mental anguish, and that which she will, in all probability, suffer in the future;

   c. The medical expenses that Plaintiff has incurred in the past and will, in all probability, continue to incur in the future;

   d. Court costs;

   e. Exemplary damages;

   f. Any and all other damages, both general and special, at law and in equity, to which Plaintiff may be justly entitled.

## IX.
## PRESERVATION OF EVIDENCE

92. Plaintiff hereby requests and demands that Defendant preserve and maintain all evidence pertaining to any claim or defense related to the incident made the basis of this lawsuit, or the damages resulting therefrom, including photographs; videotapes; audiotapes; recordings;

16

business or medical records; bills; invoices; checks; correspondence; memoranda; files; facsimiles; email; voice mail; text messages; and any electronic image, data or information related to Plaintiff, the referenced incident, and any damages resulting therefrom. Failure to maintain such items will constitute spoliation of the evidence.

## X.
## NOTICE OF INTENT TO USE DOCUMENTS

93.     Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Plaintiff gives notice that she may use documents produced by all parties in response to written discovery at any pretrial proceeding in this case as well as at trial.

## XI.
## DEMAND FOR JURY

94.     Plaintiffs demand a trial by jury on all claims and have paid the applicable fee.

## XII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited in terms of law to appear and answer herein; that, upon final trial and hearing hereof, Plaintiff recover damages from Defendant in accordance with the evidence; that Plaintiff recover interest to which Plaintiff is justly entitled under the law, both prejudgment and post-judgment; that Plaintiff recover actual damages, costs of court, and such other and further relief, both general and special, both at law and in equity, to which Plaintiff may be justly entitled.

*[Signatures begin on following page.]*